IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRAVIS LASKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1421 |
| | ) | |
| LEECHBURG POLICE DEPARTMENT; | ) | Judge Mark R. Hornak |
| OFFICER JAROD BENNIS; | ) | |
| MICHAEL DIEBOLD; | ) | |
| THE BOROUGH OF LEECHBURG; | ) | |
| AND THE DISTRICT ATTORNEY'S | ) | |
| OFFICE OF ARMSTRONG COUNTY | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

This is a civil rights action filed under 42 U.S.C. § 1983.  Plaintiff, Travis Lasko, alleges

that Defendants, Leechburg Police Department (the "Department"), Officer Jarod Bennis

("Bennis"), Police Chief Michael Diebold ("Diebold"), the Borough of Leechburg (the

"Borough"), and the District Attorney's Office of Armstrong County (the "D.A.'s Office"),

violated his rights under the Fourth and Fourteenth Amendments to the United States

Constitution when they arrested him, searched his home, and prosecuted him for possession of

narcotics and a firearm.  Plaintiff was incarcerated for approximately fifteen (15) months before

a state court vacated his sentence and suppressed the evidence from his initial case.  Plaintiff's

Complaint asserts five (5) counts: 1) violation of Plaintiff's Fourth Amendment rights by all

Defendants; 2) violation of Plaintiff's Fourteenth Amendment rights by all Defendants; and 3-5)

failure to train, enact and implement policies and procedures, and supervise properly by the

Defendants Department, Diebold, and the Borough.

The D.A.'s Office filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief can be granted. The Department, Bennis, Diebold, and the Borough filed a separate Motion to Dismiss, arguing that Plaintiff's Complaint is barred by the applicable statute of limitations. [Doc. Nos. 19, 13].

For the reasons set forth below, the Motion to Dismiss filed by the D.A.'s Office will be granted. All claims against the D.A.'s Office shall be dismissed with prejudice. The Motion to Dismiss filed by the Department, Bennis, Diebold, and the Borough will be granted in part and denied in part. All claims against the Department and Bennis shall be dismissed with prejudice. As to the remaining claims against Diebold and the Borough for allegedly violating Plaintiff's Fourth and Fourteenth Amendment rights and for failure to train, the Motion to Dismiss will be denied.

## I.   BACKGROUND & PROCEDURAL HISTORY

On September 8, 2006, Plaintiff's then-girlfriend, Sue Ward, filed a complaint with the Department alleging that Plaintiff threatened her and her son with a gun. Diebold was the Leechburg Chief of Police at the time. Based on this information, Bennis sought and obtained an arrest warrant for Plaintiff and a search warrant for Plaintiff's home. The search warrant application stated that the item to be searched for was "[a] small black and white hand gun of unknown caliber." [Doc. No. 23-3].

Plaintiff was arrested at the front door of his home after he let the police in. [Doc. No. 23-3]. Following the arrest, officers from the Department went to the second floor of the home and spotted a potted marijuana plant. The officers then stopped their search to obtain a second search warrant to search for the presence of drugs in the house. During the second search, the officers found the black and white handgun. Id. Plaintiff was charged with possession of a

controlled substance, possession with the intent to manufacturer or deliver a controlled substance, possession of marijuana, possession of drug paraphernalia, and possession of a firearm. [Doc. No. 23-1].

At Plaintiff's preliminary hearing, Ward retracted her written statement that Plaintiff had threatened her and her son with a gun.  She refused to testify against Plaintiff and told Bennis that Plaintiff had been holding a cell phone, not a gun.   [Doc. No. 23-3].

On December 18, 2006, Bennis filed a criminal complaint against Ward for making false reports to law enforcement.  Id.  In the affidavit of probable cause against Ward, Bennis stated that Ward initially did not report the brandishing of any weapon, then reported that Plaintiff had a knife, then reported that Plaintiff had a gun, not a knife.  The affidavit also stated that Ward and her son were initially uncooperative and unwilling to provide a written statement.  Id.

On February 14, 2007, court-appointed counsel entered an appearance on behalf of Plaintiff.  Commonwealth v. Lasko, 14 A.3d 168, 169 (Pa. Super. 2011).  Plaintiff initially agreed to enter a guilty plea, but later refused.  Id.  On April 2, 2007, the trial court granted Plaintiff's counsel's request for a continuance so that counsel could file a motion to suppress.  Id.  Plaintiff's counsel, however, did not file a motion to suppress and the matter was eventually scheduled by the court for jury selection on July 7, 2008.  Id.

On July 7, 2008, Plaintiff told the trial court he was dissatisfied with his court-appointed counsel.  Id.  Plaintiff claimed that counsel refused to file a motion to suppress and was pressuring him to enter a guilty plea rather than proceeding to trial.  Id.  Plaintiff repeatedly asked for counsel who would do as he wished and stated that he felt threatened by his attorney and by the prosecutor.  Id. at 170, 173.  In response, the court-appointed attorney claimed

Plaintiff was "difficult" and stated that she believed that Plaintiff might not have been eligible for a public defender because of his employment as a manager at a fast food chain. Id. at 170-71.

The trial court did not make any inquiry into Plaintiff's claims that his attorney refused to file a suppression motion, trial counsel's willingness and preparation to proceed to trial, trial counsel's delay in inquiring into Plaintiff's eligibility for services, Plaintiff's ability to pay a new attorney, or whether Plaintiff had an opportunity to obtain new counsel. Id. at 172-73. Rather, the trial court conducted a waiver of counsel colloquy, which the Superior Court of Pennsylvania later determined did not meet the standard for such colloquies as set forth by the Supreme Court of Pennsylvania or Pennsylvania Rule of Criminal Procedure 121(A). Id. at 173.

Plaintiff then litigated his motion to suppress *pro se*, which was ultimately denied by the court. Id. at 170. Plaintiff also represented himself in his trial. Plaintiff was convicted by a jury for possession of a controlled substance, possession with intent to deliver, possession of a small quantity of marijuana, and possession of drug paraphernalia. Id.

On August 5, 2008, Plaintiff appeared for sentencing and requested a continuance because his newly-retained counsel had been hospitalized. Id. The trial court denied the request because counsel had not entered an appearance. Plaintiff was then sentenced to an aggregate term of incarceration of fifteen (15) to thirty (30) months. Id.

Plaintiff filed a timely appeal of his conviction and was ordered to file a concise statement of errors complained of. Id. Plaintiff's appellate counsel, however, failed to do so and the appeal was dismissed by the Superior Court of Pennsylvania on February 23, 2009. Id.

On October 13, 2009, Plaintiff, acting *pro se*, filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), seeking restoration of his direct appeal rights. Id. On November 1, 2009, Plaintiff was released on parole. Lasko, 14 A.3d at 170 n.6. On April 7,

2010, the PCRA court granted Plaintiff's petition, reinstating Plaintiff's appeal rights. Lasko, 14 A.3d at 170. Plaintiff then filed a timely appeal. Id. The Superior Court of Pennsylvania held that Plaintiff's Sixth Amendment right to counsel was violated and vacated the judgment of sentence and remanded for a new trial. Id. at 173-74.

Plaintiff filed a suppression motion and the trial court held argument on the motion on July 22, 2011. [Doc. No. 23-3]. On October 27, 2011, the trial court held that, based on the case of Commonwealth v. Antoszyk, 38 A.3d 816 (Pa. 2011), in which material misstatements rendered a search warrant invalid, there was a lack of independent probable cause for the first search warrant and arrest warrant due to Ward's misstatements regarding the alleged gun. [Doc. No. 23-3]. Consequently, the court held that the second search warrant was the fruit of a poisonous tree. The trial court also held that the police search incident to Plaintiff's arrest, which led to the discovery of the marijuana on the second floor, was overly broad. Id. Thus, the trial court held that the evidence found pursuant to the second warrant was not discovered by means sufficiently distinguishable to purge that evidence of the primary taint of the first warrant. Id.

The D.A.'s Office filed an interlocutory appeal of the suppression order. On September 7, 2012, the Superior Court of Pennsylvania issued an order affirming the October 27, 2011 suppression order. Since then, the matter has not been rescheduled for trial nor has the D.A.'s Office dismissed the criminal charges against Plaintiff.

## II.    STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is

and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a complaint must contain sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Twombly, 550 U.S. at 555).

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we must conduct a three-step inquiry. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, we must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. Second, we must identify the allegations that "are no more than conclusions [and] are not entitled to the assumption of truth." Id. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. (internal quotation omitted).

We may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In the end, if, in view of the facts alleged, it can be reasonably conceived that the plaintiff could, upon a trial, establish a case that would entitle him to relief, the motion to dismiss should not be granted. Id. at 563 n.8.

In deciding this Rule 12(b)(6) motion, the court must consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Complainant's claims are based on these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

III.  **Discussion**

A.  **Dismissals for Failure to State a Claim**

1.  **Claims Against the D.A.'s Office**

Section 1983 authorizes private parties to enforce their federal constitutional rights, and some federal statutory rights, against "[e]very person" who acted under color of state law. Groman v. Twp. of Mich., 47 F.3d 628, 638 (3d Cir. 1995); 42 U.S.C. § 1983. The D.A.'s Office is not a "person" to be sued under Section 1983. In Reitz v. County of Bucks, 125 F.3d 139, 148 (3d Cir. 1997), our Court of Appeals specifically held that a district attorney's office is "not an entity for purposes of § 1983 liability." Although certain public entities, such as a county or borough, may be held liable under Section 1983 in certain circumstances, a district attorney's office is not such an entity. Id. Thus, the Motion to Dismiss of the D.A.'s Office is granted and the claims against it are dismissed with prejudice.

2.  **Claims Against the Department**

Plaintiff's Section 1983 claims against the Department must also be dismissed. In Section 1983 actions, police departments cannot be sued in conjunction with municipalities. See e.g., Bonenberger v. Plymouth Tp., 132 F.3d 20, 25 n.4 (3d Cir. 1997) (citing Colburn v. Upper Darby Twp., 838 F.2d 663, 671 n.7 (3d Cir. 1988)); Padilla v. Township of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (upholding grant of summary judgment to police department in

Section 1983 action); <u>Hernandez v. Borough of Palisades Park Police Dept.</u>, 5 F. App'x 909, 912 (3d Cir. 2003). A police department is merely an administrative arm of the local municipality. <u>Id</u>. Therefore, as a matter of form, a proper pleading names the municipality that the police department is a part of rather than the police department itself. Here, the Leechburg Police Department is a part of the Borough of Leechburg, which is already named as a Defendant. Therefore, the claims against the Department are dismissed with prejudice.

### 3.    <u>Claims Against Bennis</u>

Officer Bennis enjoys qualified immunity from this suit and, accordingly, Plaintiff's claims against him must be dismissed. Although Section 1983 does not specifically address immunities, the United States Supreme Court reads Section 1983 in harmony with the general principles of tort immunities. <u>Malley v. Briggs</u>, 475 U.S. 335, 339 (1986). Qualified immunity protects government officials from liability for civil damages so long as they do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Bayer v. Monroe Cty. and Youth Services</u>, 577 F.3d 186, 191 (3d Cir. 2009) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 1982)). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." <u>Walter v. Pike Cty., Pa.</u>, 544 F.3d 182, 190 (3d Cir. 2008). Qualified immunity is conditioned on the resolution of the essentially legal question of whether the conduct of which a plaintiff complains violated clearly established law. <u>Id</u>. Only where a warrant application is so lacking in probable cause as to render official belief in its existence unreasonable will qualified immunity be lost. <u>Malley</u>, 475 U.S. at 344-45.

In the context of a police officer seeking a warrant, objective reasonableness is the standard for whether qualified immunity applies. <u>Malley</u>, 475 U.S. at 544-45. The test for objective reasonableness is whether a reasonably well-trained officer would know that his

affidavit failed to establish probable cause and that he should not have applied for the warrant. Id.

Here, the Court concludes that, as to Bennis, the test is met. There was nothing in the record to indicate that the threats against Ward had not occurred, despite her initial reluctance to file a complaint. Even though Ward's story changed and even though she later refused to testify, Bennis still acted reasonably in seeking a warrant for Plaintiff because Ward was troubled enough to seek out police assistance. There is no allegation that Bennis knew that his affidavit relying on what Ward reported to him was so lacking in probable cause that it should not have been made. He is entitled to qualified immunity. The claims against him are dismissed with prejudice.

**B.    Statute of Limitations**

Diebold and the Borough are the only remaining Defendants after dismissing the claims against the D.A.'s Office, the Department, and Bennis.[1] The following allegations against Diebold and the Borough remain: violation of Plaintiff's Fourth and Fourteenth Amendment rights and failure to train, enact and implement policies and procedures, and supervise properly.

Defendants Diebold and the Borough assert that Plaintiff's claims are barred by the applicable statute of limitations. Defendants argue that Plaintiff's claims accrued on September 8, 2006, when Plaintiff was arrested and his house was searched. For the following reasons, Defendants' Motion to Dismiss on this basis will be denied.

Section 1983 authorizes private parties to enforce their federal constitutional rights, and some federal statutory rights, against defendants who acted under color of state law. Groman v.

---

[1] As stated above, dismissal of the D.A.'s Office, the Department, and Bennis is appropriate as a matter of law because the D.A.'s Office is not a "person" to be sued under Section 1983, the Department cannot be sued distinctly from the municipality to which it belongs, and Bennis is entitled to rely on qualified immunity. In contrast, Section 1983 actions against a police chief and a borough are definitionally proper. Therefore, the Court will consider the arguments of Defendants Diebold and the Borough that were raised in their Motion to Dismiss.

Twp. of Mich., 47 F.3d 628, 638 (3d Cir. 1995). Section 1983 does not create or establish any particular federally protected right. Rather, Section 1983 creates a cause of action for plaintiffs to enforce federal rights created by the Constitution or under other federal laws. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Even though Section 1983 provides a federal cause of action, federal law looks to the law of the state in which the cause of action arose for the length of the statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007). The length of the statute of limitations in Section 1983 actions is that which the state provides for personal-injury torts. Id. In Pennsylvania, the statute of limitations for personal-injury torts is two (2) years. 42 Pa.C.S.A. § 5524. When a claim accrues, however, is a matter of federal law. Kato, 549 U.S. at 388. When Plaintiff's claims relating to the arrest and search of his house accrued is the main point of contention between the parties.

Defendants argue that Plaintiff's claims accrued on September 8, 2006, the day the arrest and search occurred. Defendants argue that the standard for accrual is that the claim accrues when a Plaintiff knows or has reason to know of the injury that is the basis of the Section 1983 action. Defendants also claim that, in the case of a Fourth Amendment based Section 1983 action for an unlawful search and seizure, the claim accrues on the same day that the search and seizure takes place. Defendants rely on an unpublished Third Circuit decision, Macnamara v. Hess, 67 Fed. App'x. 139 (3d Cir. 2003), to support this proposition.

Plaintiff argues that such claims accrue when there is a complete and present cause of action. Plaintiff argues he could not have known he had a complete cause of action until, at the earliest, the evidence against him was suppressed on October 26, 2011.

The Supreme Court of the United States held that Section 1983 "creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483 (1994) (quoting Memphis Cmty. Sch. Dist. V. Stachura, 477 U.S. 299, 305 (1986)). The common law tort rules that have developed to define the elements of damages and the prerequisites for their recovery "are the appropriate starting point for the inquiry under [Section] 1983." Heck, 512 U.S. at 483 (quoting Carey v. Piphus, 435 U.S. 247, 257-58 (1978)). Therefore, when identifying an accrual date in a Section 1983 action, we are to consider the common law's treatment of the cause of action by identifying "the closest analogy to claims of the type considered." Wallace, 549 U.S. at 388 (citing Heck, 512 U.S. at 484).

In Heck, a prisoner challenged the legality of the investigation that led to his conviction for voluntary manslaughter by filing a Section 1983 action. There, the Supreme Court held that the common law cause of action for malicious prosecution provided the closest analogy to the claims at issue because, "unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484.

In Wallace, a teenager suspected of murder was located, transported to the police station, and questioned into the early morning hours of the next day, when he then signed a confession. 549 U.S. at 386. After being convicted at trial, the petitioner filed a Section 1983 action alleging unlawful arrest. The Supreme Court reasoned that the closest common law analogy to the claim at issue was false imprisonment,[2] which meant unlawful detention without legal process. 549 U.S. at 388-89. The petitioner in Wallace was held without legal process because there was no warrant issued for his arrest. Id.

---

[2] The Supreme Court used the term false imprisonment to refer to both of the common law torts of false imprisonment and false arrest. 549 U.S. at 388-89.

Here, Plaintiff's claims are best analogized to malicious prosecution because he was confined pursuant to legal process, i.e., an arrest warrant and two search warrants. Cf. Wallance, 549 U.S. at 389 (where plaintiff was held without process).

Under the common law, the standard rule is that accrual occurs when a Plaintiff has a complete and present cause of action. Wallace, 549 U.S. at 388. "Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Heck, 512 U.S. at 489. Therefore, Plaintiff had no cause of action until his conviction was invalidated, which occurred, at the earliest, on October 26, 2011 when the evidence against him was suppressed.[3]

The Court rejects Defendants' argument that, based on a footnote in Heck, which is referenced in Macnamara v. Hess, 67 Fed. App'x. 139 (3d Cir. 2003), the Heck rule does not apply to a lawsuit seeking damages for an illegal search or seizure because such a claim, even if successful, would not necessarily imply the conviction was unlawful. See Heck, 512 U.S. at 487 n.7. In Heck, the Supreme Court explained that, because a civil action cannot be used to collaterally attack a criminal conviction, a Section 1983 claim for damages must be dismissed where the success of the action would imply the invalidity of an outstanding conviction. Heck, 512 U.S. at 487. The exception to this rule, the Court noted, was the situation where the District Court determines that a prisoner's Section 1983 action will not demonstrate the invalidity of an outstanding criminal judgment even if successful. Id.

---

[3] A determination that Plaintiff had no cause of action until the evidence against him was suppressed fits squarely with the reasoning in Heck and Wallace that Section 1983 claims are not to be used to challenge still-standing or unripened convictions from a pending prosecution. Heck, 512 U.S. at 484-88; see also Wallace, 549 U.S. at 393.

12

Here, there is nothing in the record capable of purging the taint of the first search warrant that led to the issuance of the second search warrant and the discovery of the illegally obtained evidence. There was no independent source, inevitable discovery, or harmless error theory that could be used to justify the police action. Heck, 512 U.S. at 487 n.7. Additionally, unlike the situation contemplated or set forth in Heck, the conviction here has already been invalidated. There is no risk that the result of this Section 1983 action will call into question an existing or inchoate criminal conviction. Thus, the statute of limitations on Plaintiff's Fourth Amendment based claims began to run on October 26, 2011, less than two (2) years before the filing of this lawsuit.

Defendants also contend that Plaintiff's failure to train claims are barred by the statute of limitations. The court disagrees and finds that Plaintiff's failure to train claims are timely.

"Under 42 U.S.C. § 1983, a municipality may be liable for the failure to train its employees only where that failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact.'" Doe v. Luzerne Cty., 660 F.3d 169, 179-80 (3d Cir. 2011)(citing Canton v. Harris, 489 U.S. 378, 388 (1989)). A police chief may be liable under Section 1983 on a theory of supervisory liability. See Brown v. Muhlenberg Twp., 269 F.3d 205, 217 (3d Cir. 2001)(citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d. Cir. 1989)). As stated above, a Section 1983 claim for damages from an unconstitutional conviction does not accrue until the conviction is invalidated. Heck, 512 U.S. at 489. Because the "failure to train" claims are in this regard inexorably intertwined with the core Fourth and Fourteenth Amendment claims remaining as to Diebold and the Borough, they to are governed by the same statute of limitations analysis and application.

These claims, like Plaintiff's more direct claims for violation of his Fourth and Fourteenth Amendment rights, did not accrue until, at the earliest, October 26, 2011, when the evidence against him was suppressed.   Therefore, Plaintiff's failure to train claims against Diebold and the Borough are also timely.

An appropriate Order will be entered.

Mark R. Hornak
United States District Judge

Dated: May 31, 2013

cc:   All counsel of record